IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VERNON MARK YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:12-CV-00468 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Vernon Mark Young ("Young"), filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Young alleges that the Administrative Law Judge ("ALJ") erred by improperly weighing the opinion of consultative examiner William Humphries, M.D. regarding Young's manipulative limitations.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that substantial evidence supports the ALJ's analysis of Dr. Humphries's opinion as to Young's manipulative restrictions, and the ALJ's decision as a whole. Accordingly, I **RECOMMEND**

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013.

1

**DENYING** Young's Motion for Summary Judgment (Dkt. No. 9), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 13.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Young failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Young bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

## STATEMENT OF FACTS

### Social and Vocational History

Young was born on August 5, 1961 (Administrative Record, hereinafter "R." at 194), and was considered a younger individual on his alleged onset date. R. 17; 20 C.F.R. § 404.1563; 20

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

C.F.R. § 416.963.  Young's date last insured is September 30, 2008.  R. 33.  He must show that his disability began before that date, and existed for twelve continuous months to receive DIB.  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).  Young attended high school until the tenth grade and obtained a GED.  R. 35.  Young most recently was employed as a carpenter from 2003 to 2005, which was classified by the vocational expert as skilled, medium work.  R. 52, 222, 244.  Before that, Young worked as a roofer from 2001 to 2003, also classified as skilled, medium work.  R. 52, 222, 244. At the hearing, Young reported that during the relevant period, he had the capacity to shower with help, watch television, read, do laundry, prepare sandwiches and canned food, shop for food, and button his shirts with help.  R. 44, 270–73.

## Claim History

Young protectively filed for SSI and DIB on August 18, 2008, claiming that his disability began on August 15, 2005.  R. 10, 34.  The Commissioner denied his application at the initial and reconsideration levels of administrative review.  R. 122–31, 132–38.  On September 17, 2010, ALJ William B. Russell held a hearing to consider Young's disability claim.  R. 30–56.  Young was represented by an attorney at the hearing, which included testimony from Young, Ward M. Stevens, M.D., and vocational expert ("VE") Robert W. Jackson.  R. 30–56.

On February 24, 2011, the ALJ entered his decision denying Young's claims.  R. 7–18.  The ALJ found that Young suffered from the severe impairments of gouty arthritis, partial tear of the right anterior cruciate ligament, patellofemoral syndrome, and carpal tunnel syndrome.  R. 12.  The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment.  R. 13.  The ALJ further found that Young retained the RFC to perform light work, with the following additional restrictions: (1) he can occasionally

4

climb ramps and stairs, but not ladders, ropes, or scaffolds; (2) he should avoid hazards such as moving machinery and unprotected heights; (3) he is able to maintain attention and concentration for periods [of time] commensurate with short, simple, routine, [and] repetitive tasks; and, (4) he should only engage in superficial interaction with the public. R. 13. The ALJ determined that Young could not return to his past relevant work as a carpenter or a roofer (R. 17), but that Young could work at jobs that exist in significant numbers in the national economy such as a production worker, material handler, or inspector. R. 17. Thus, the ALJ concluded that he was not disabled. R. 18. On August 23, 2012, the Appeals Council denied Young's request for review (R. 1–3), and this appeal followed.

## **ANALYSIS**

The only issue raised in this action is whether the ALJ erred by according little weight to the manipulative limitations imposed by Dr. Humphries in his consultative exam in November 2008, in which he stated that Young "cannot perform repetitive gripping, grasping, pushing and pulling in a production setting." R. 356. The ALJ found Dr. Humphries' manipulative assessment to be "inconsistent with his own clinical findings as well as failing to correlate functionality with other clinical findings in the record." R. 16. Accordingly, the ALJ did not include any manipulative restrictions in Young's RFC (R. 13) or the hypothetical question posed to the VE at the hearing. R. 52–54. I find that substantial evidence supports the ALJ's decision to give little weight to Dr. Humphries' opinion regarding Young's manipulative restrictions, and that the ALJ's decision is supported by substantial evidence as a whole.

"State agency medical and psychological consultants … are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation," and therefore, the ALJ "must consider their findings except for the ultimate

5

determination about whether a claimant is disabled." 20 CFR § 404.1527(e)(2)(i). While an examining physician's opinion is generally accorded more weight than a non-examiner's opinion, if an "opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.2001) (citing Craig v. Chater, 76 F.3d 385, 590) (4th Cir. 1996). In evaluating the weight to give the opinion of a consulting physician, the ALJ must consider various factors, including the explanation and support for the opinion, as well as its consistency with the record as a whole. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Moreover, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96–8p, 1996 WL 374184, at *7 (July 2, 1996)).[3] The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave" to the opinion and "the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

The sole issue in this appeal revolves around Young's ability to use his hands. The medical record shows that the bulk of Young's treatment relates to back and knee problems; Young does not challenge the ALJ's RFC with regard to these impairments. With regard to his arms and hands, the records show that Young reported joint pain in his elbows and wrists that was attributed to gouty arthritis and carpal tunnel syndrome. However, sparse objective evidence in the record supports Dr. Humphries' assessment that Young cannot grip, grasp, push and pull in a repetitive manner.

---

[3] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

6

On December 6, 2007, Young saw rheumatologist Robert Cassidy, M.D. and reported problems with carpal tunnel syndrome in his fingers and was experiencing passive numbness while wearing splints. R. 327. Dr. Cassidy noted that this "may have to be addressed" but did not provide for any treatment plan. R. 327. In April 2008, Joseph Canvin, M.D. evaluated Young and noted no appreciable weakness in Young's limbs and normal and symmetrical reflexes. R. 410. Dr. Canvin also noted that there was no inflammation in Young's hands or elbows. R. 410. Rheumatologist Robert R. Johnson, M.D., saw Young on referral for a presumptive diagnosis of gout in June 2008. R. 314–18. Young's exam was largely normal, showing no swelling in his finger joints, and normal motion in his wrists, elbows, and shoulders. R. 317.

On November 6, 2008, William Humphries, M.D. examined Young for the Department of Rehabilitative Services and produced the report that is the focus of this appeal. R. 353. Young reported that he experienced pain in the wrists and hands to a "variable degree at different times for the last two years." R. 353. Dr. Humphries found reduced range of motion in both shoulders, and slightly reduced motion in elbows, wrists, and hands. R. 354. Some tenderness was observed in these areas, and mild synovial thickening in Young's finger joints was noted in both hands. R. 354. A Tinel's sign test was negative bilaterally, and Dr. Humphries observed no sensory loss in his palms and fingers. R. 354–55.

Dr. Humphries found Young's grip to be at full strength, and Young got onto the examination table without help. Young's radial, median, and ulnar nerve functions were intact bilaterally. R. 355. Notably, Young's "fine manipulations [were] performed adequately bilaterally." Dr. Humphries diagnosed gouty arthritis and carpal tunnel syndrome by history, but it was ok "at this time." R. 356. Dr. Humphries concluded in his report that, despite having

7

performed adequately with during the examination, Dr. Humphries stated that Young "cannot perform repetitive gripping grasping, pushing and pulling in a production setting." R. 356.

On November 14, 2008, state agency physician Brian Strain, M.D., reviewed Young's medical records. R. 57–86. Dr. Strain credited Dr. Humphries's RFC with the exception of the limitation for gripping, grasping, pushing or pulling in a production setting. R. 61, 71. On December 4, 2008, Young visited Dr. Johnson with complaints of pain in his knee, feet, wrist, and elbow. R. 367–69. Young's physical exam was normal except for tenderness in his right foot without swelling. R. 368. In February 2009, state agency physician Francis Joseph Duckwall, M.D made similar findings and rendered an identical opinion to Dr. Strain's from November 2008, finding Young not disabled with no manipulative limitations. R. 90–121.

On August 31, 2009, neurosurgeon John C. Fraser, M.D., conducted a consultative examination to see if Young was a candidate for back surgery. R. 484. Dr. Fraser did not observe erythema or swelling in Young's hands or elbows. R. 386. More than a year later, Young presented to Dr. Cassidy with bilateral wrist pain on August 6, 2010. R. 452–55. Dr. Cassidy noted that there was no bony abnormality or fractures in both wrists, and but that Young had a history of gout. R. 452. Some generalized swelling was observed in both wrists, and some global limitation was also indicated. R. 452. There was tenderness in both wrists with pain on grip with some weakness, but no signs of atrophy. R. 452.

Young visited a general practitioner again on July 11, 2011, complaining of skin abnormalities and joint pain. R. 503–09. During that visit, Sarah Stubbs, M.D., noted joint pain in Young's elbow and wrist joints; however, she did not note any swelling, tenderness, or redness. R. 504. Dr. Stubbs noted that Young had a full range of motion and there was no decrease in strength in Young's extremities. R. 505.

On August 18, 2011 Young stated that his gout had been "doing better overall," and Dr. Johnson indicated Young displayed normal tone and strength. R. 529. Similarly, Young was "doing well" on gout medication in October 2011 and only one acute attack had occurred since the dosage was adjusted. R. 538. Young did complain to his family doctor later in October 2011 of joint pain and generalized numbness from his elbow to hands. R. 542

This medical record provides substantial evidence in support of the ALJ's decision to accord little weight to assessment of manipulative limitations by Dr. Humphries. Notably, Dr. Humphries' own examination of Young does not support such a limitation. Moreover, the records and opinions of other examiners and evaluators fail to corroborate Dr. Humphries' limitation that Young could not work in a production setting with repetitive use of his hands and fingers.

First, Dr. Humphries' own observation of Young does not support his manipulative restriction. Dr. Humphries noted slightly reduced range of motion in Young's elbows, wrists, and hands and some mild synovial thickening in Young's finger joints. R. 354. In addition to these mild findings, Dr. Humphries found no tenderness, atrophy, or sensory loss in Young's palm and fingers. Dr. Humphries also noted "5/5" grip strength in both hands. Furthermore, Dr. Humphries specifically stated that Young's "[f]ine manipulations are performed adequately bilaterally." R. 355. Strength was noted to be normal in all extremities. Despite these benign observations and findings, Dr. Humphries determined that Young could not "perform repetitive gripping, grasping, pushing and pulling." R. 356. This conclusion simply does not follow from the results of Dr. Humphries' examination, and the ALJ properly discredited this portion of Dr. Humphries' opinion on these grounds.

Second, other medical evidence weighs against the manipulative restrictions assessed by Dr. Humphries. The majority of Young's treatment focused on Young's knee and back problems, although occasionally since 2005 Young did report symptoms of joint pain in his arms and hands. R. 314, 327, 389, 452, 502–503. When Young did report pain in his hands or arms, objective evidence failed to show any limitations in the use of his hands and arms. For example, Young reported joint pain in April 2008 but Dr. Canvin found no weakness in Young's limbs and observed no synovitis in the hands, elbows, and knees. R. 411. Also in April 2008, Young complained of joint pain in both of his hands but Dr. Cassidy recommended physical therapy with no work restrictions. Notably, Young reported stiffness and slight pain in his hands to rheumatologist Dr. Johnson in January and July 2009, but Dr. Johnson's physical examinations both times found normal grip, normal range of motion and no swelling in Young's hands. R. 390, 399. More recently in October 2011, Young reported wrist pain to his family doctor, but upon examination there was no swelling or tenderness. R. 543. The evidentiary conflict between these treatment records and the conclusion of Dr. Humphries was properly resolved by the ALJ.

Finally, other opinion evidence buttresses the ALJ's decision. Both state agency physicians, Dr. Strain and Dr. Duckwall essentially adopted Humphries' RFC with the exception of the manipulative restrictions. R. 57–86, 90–121. With the lack of objective evidence of functional limitation in the record, and the opinions of two disability experts failing to adopt manipulative limitations, the ALJ was on firm ground when discrediting a portion of Dr. Humphries' opinion. <u>Mastro</u>, 270 F.3d at 178 (citing <u>Craig</u>, 76 F.3d at 590).

While the record shows that Young has impairments from joint pain, the record also shows that these conditions do not substantially affect his ability to push, grasp, pull, or continuously grip. Moreover, the ALJ's explanation for discrediting Dr. Humphries'

manipulative assessment, while brief, is adequate and specific enough under the regulations. The ALJ stated that Dr. Humphries' manipulative restrictions were "inconsistent with his own clinical findings as well as fail[] to correlate functionally with other clinical findings in the record." This is a sufficient statement so as to allow judicial review by this court. See S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996). As substantial evidence supports the ALJ's analysis as to Dr. Humphries' opinion and the decision as a whole,[4] I find that remand or reversal is not warranted.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Young's claim for benefits and in determining that his impairments would not significantly limit his physical ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Young's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

---

[4] As a corollary to his main argument regarding Dr. Humphries' opinion, Young argues that the ALJ's hypothetical question to the VE was improper due to the omission of Dr. Humphries' manipulative restrictions. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). As I have found that the ALJ properly assigned little weight to the manipulative restrictions assigned by Dr. Humphries, it logically follows that those manipulative restrictions are not supported by the record, and are therefore, not relevant to the RFC as given to the VE at the hearing.

11

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

      Enter: January 31, 2014

      *Robert S. Ballou*

      Robert S. Ballou
      United States Magistrate Judge